## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

AMY BOLTON-CURLEY and BOLTON
MEDIA PRODUCTIONS, INC.,

                Plaintiffs,                      Case No. _____

        v.

**JURY TRIAL DEMANDED**

SCRIPPS NETWORKS, LLC and BOUNCE
MEDIA, LLC,

                Defendants.
_____/

## COMPLAINT

COME NOW Plaintiffs, Amy Bolton-Curley ("Bolton-Curley") and Bolton

Media Productions, Inc. ("BMP") (collectively, "Plaintiffs"), by and through their

attorneys, sue Defendants Scripps Networks, LLC ("Scripps") and Bounce Media,

LLC ("Bounce") (collectively, "Defendants") and state:

## NATURE OF THE ACTION

1.     This action arises from Defendants' infringement of Bolton-Curley's

copyrighted documentary film and unfair competition in violation of the United

States Copyright Act, 28 U.S.C. §1331, 1338(a), 1338(b) and 1367, breach of a

contract to license and distribute the copyrighted film, Defendants' tortious

interference with Plaintiffs' business relationship, as well as Defendants' wrongful termination of Plaintiffs.

2.      In this action, Plaintiffs seek monetary and equitable relief, and costs, expenses and attorney's fees pursuant to 17 U.S.C. § 505.

## PARTIES

3.      At all times material hereto, Plaintiff Amy Bolton-Curley was and is an individual resident of the state of Georgia.

4.      At all times material hereto, Plaintiff Bolton Media Productions, Inc. is an incorporated company of the state of Georgia with its principal place of business located at 3481 Lakeside Drive, Suite 1104, Atlanta, GA 30326.

5.      Upon information and belief, at all times material hereto, Defendant Scripps Networks, LLC was and is a Delaware Limited Liability Company with its principal place of business at 9721 Sherrill Boulevard, Knoxville, TN 37932. Scripps conducts business in Georgia and can be served through its registered agent C T Corporation System located at 289 S. Culver Street, Lawrenceville, GA 30046.

6.      Upon information and belief, at all times material hereto, Defendant Bounce Media, LLC was and is a Georgia limited liability company with its principal place of business at 600 Galleria Parkway, Suite 1900, Atlanta, GA 30339. Bounce can be served through its registered agent Sue Graddy at 600 Galleria Parkway, Suite 900, Atlanta, GA 30339.

## SUBJECT MATTER JURISDICTION

7.     This is a civil action against Defendants for their acts of copyright infringement and unfair competition in violation of the United States Copyright Act, 28 U.S.C. §1331, 1338(a), 1338(b) and 1367 in that the controversy arises under the Copyright Act and Copyright Revision Act of 1976 (17 U.S.C. 101 *et seq.*), which is within the exclusive jurisdiction of the federal courts pursuant to 28 U.S.C. §1331.

8.     This Court has supplemental jurisdiction over the subject matter of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

9.     Costs and attorney's fees are sought pursuant to 17 U.S.C. § 505, and Rule 54 of the Federal Rules of Civil Procedure.

## PERSONAL JURISDICTION

10.     This Court has personal jurisdiction over Defendant Scripps for at least the following reasons: (a) upon information and belief, Defendant Scripps engages in persistent courses of conduct and derive substantial revenue from products and/or services provided to individuals in this judicial district and in Georgia; and (b) upon information and belief, Defendant Scripps has established systematic and continuous contacts with this judicial district and should reasonably expect to be brought into court here.

11.    Under Georgia's long-arm statute and controlling law, personal jurisdiction is proper as to Defendant Scripps because it transacts business within this state and has committed a tortious act within this state.

12.    Personal jurisdiction is proper as to Defendant Bounce because it is a citizen of Georgia with its principal place of business in Atlanta, Georgia.

## VENUE

13.    Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391 because Defendants are subject to the court's personal jurisdiction in this judicial district with respect to this action.

14.    Further, under Georgia's long-arm statute, venue is proper where the transaction or cause of action arose, or where the property is located. O.C.G.A § 9-10-93.

## FACTS

15.    Plaintiff Amy Bolton-Curley is an experienced story producer with a diverse background in video production and with credits on over 200 videos, television shows, and specials since 1986. She is the principal of Bolton Media Productions, Inc.

16.    Owing to the popularity and renowned quality of her productions, Bolton-Curley owns and maintains a robust portfolio of intellectual property,

including a multitude of registered and unregistered intellectual properties, including but not limited to various copyrights associated with and related to her works.

17.     Among her intellectual properties, Bolton-Curley is the author and claimant of U.S. Federal Copyright Reg. No. 004188353 (attached hereto as **Exhibit A**) registered for "The UnAssuming Activist, Xernona Clayton: A Life to Remember."

18.     In early 2014, Bolton-Curley and BMP began producing a documentary film on the subject of Xernona Clayton, an African American Civil Rights Activist and Media Broadcasting Executive, also the creator of the Trumpet Awards to honor achievements of African Americans.

19.     Plaintiffs and Xernona Clayton entered into a production agreement on February 28, 2014, for a documentary about the life of Xernona Clayton titled, "The UnAssuming Activist, Xernona Clayton: A Life to Remember" (the "Copyrighted Documentary").

20.     The production agreement between Plaintiffs and Mrs. Clayton includes, inter alia, Plaintiffs' fifty percent interest in all copyrights and fifty percent ownership in the Copyrighted Documentary.

21.     The production agreement states, among other things, "the Parties acknowledge and agree that no party has the authority to enter into any oral or written

agreement or commitments on behalf of the other parties or in connection with [the documentary] without written approval from the Parties."

22.    During the development of the Copyrighted Documentary, Bolton-Curley organized several original interviews of people connected to Mrs. Clayton's life.

23.    Bolton-Curley, as executive producer of the Copyrighted Documentary, independently created the content incorporating creative decisions as to multiple aspects of the film.

24.    Defendant Scripps, formerly known as Katz Broadcasting, LLC, is an American digital multicasting network media company and a division of the E. W. Scripps Company.

25.    Defendant Bounce is one of the entertainment brands under the Scripps umbrella. It features Bounce TV, an American digital multicast television network that features a mix of original and acquired programming geared toward African Americans between twenty-five and fifty-four years of age, as well as Brown Sugar, a streaming service featuring 1970s Black cinema and TV series.

26.    On or about October 25, 2018, Bounce sent an inquiry to Plaintiffs about licensing the Copyrighted Documentary. The email inquiry sent to Bolton-Curley noted that Bounce would arrange a "usage fee" for the documentary and

asked how much it would cost for Bounce to use the documentary in the following ways:

1. To use the documentary for a 90-day timeframe (1/1/19 to 3/31/19).
2. Air the documentary in its entirety on Bounce TV and /or the Brown Sugar SVOD service.
3. Use video and audio excerpts/snippets from the documentary for promos/community outreach vignettes for Trumpet Awards, Black History Month and Black Women's History Month.

27.    The October 25th email noted that Bounce would be meeting with Mrs. Clayton the following week to "discuss some other items" and that it would be great if Bounce "had some numbers to work from."

28.    However, per the production agreement between Plaintiffs and Mrs. Clayton, Bolton-Curley informed Scripps that Mrs. Clayton did not have the authority to grant Scripps the right to use the materials of the documentary without Bolton-Curley's consent.

29.    In anticipation of entering into an agreement with Defendants, Bolton-Curley shared the Copyrighted Documentary and all of its elements with the creative and executive teams at Bounce.

30.    After meeting with Bolton-Curley and reviewing the Copyrighted Documentary materials, Defendants did not take the license to the Copyrighted Documentary.

31.     Four years later, Scripps contracted Plaintiffs to interview and produce a documentary titled, "Xernona Clayton: Life in Black and White," based on the life of Mrs. Clayton.

32.     On or about September 29, 2022, Bolton-Curley was interviewed by Scripps executives for the position of Executive Producer for "Xernona Clayton: Life in Black and White" (hereinafter, the "Infringing Documentary"). Bolton-Curley was informed that she was one of two candidates being considered for the position.

33.     During Bolton-Curley's interview, she was made aware that the Copyrighted Documentary was shared and viewed internally by the Scripps staff prior to the interview.

34.     On or about November 14, 2022, Defendants announced that Bolton-Curley was not selected to produce the Infringing Documentary and that Defendants decided to hire the other candidate.

35.     On or about November 14, 2022, Scripps exchanged emails with Bolton-Curley regarding "previous conversations about Trumpet Awards and the Xernona Clayton special." Defendants made an offer for BMP to be the selected production company of the 2024 Trumpet Awards with Bolton-Curley as Executive Producer.

36.   Plaintiffs accepted the positions and began planning the Trumpet Awards in or about December 2022.

37.   Bolton-Curley created a recommendation overview for the 2024 Trumpet Awards and presented this to Scripps and Bounce on or about January 12, 2023, to a glowing reception by Scripps.

38.   Following the January 12, 2023, communications, Scripps approved Bolton-Curley to move forward with hiring personnel for the 2024 Trumpet Awards, such as a Talent Executive, Technical Manager, and Technical Consultant.

39.   Scripps and Bolton-Curley discussed the budget and producer fees for BMP to produce the 2024 Trumpet Awards. Plaintiffs did not receive a written contract from Defendants at any point during this time.

40.   Bolton-Curley retained additional staff members in preparation for an upcoming project site survey visit to the Nassau, Bahamas proposed location for the 2024 Trumpet Awards from January 19 to January 22, 2023.

41.   Despite Bolton-Curley's repeated requests to the Scripps team to receive a written contract, Defendants failed to provide one until Bolton-Curley threatened not to attend the site survey visit unless she received at least a draft.

42.    In reliance on and anticipation of the contract to produce the 2024 Trumpet Awards, Bolton-Curley turned down an opportunity to produce another award show.

43.    On or about January 17 or 18,  2023, Plaintiffs received the draft contract from Defendants. Bolton-Curley sent the draft contract to BMP's Counsel, Ricky Anderson, to review.

44.    While Bolton-Curley focused on the Trumpet Awards, Bounce hired Nancy Saslaw ("Saslaw") as the new Executive Producer of the Infringing Documentary.

45.    On January 17, 2023, Saslaw sent Bolton-Curley an email requesting "all raw materials from interviews, as well as archival footage, stills, and photos" from the Copyrighted Documentary and stated, "we're hoping to get the paperwork associated with the above in the form of appearance releases, licensing, and transcripts." Bolton-Curley did not provide materials and informed Saslaw to contact Mrs. Clayton's office.

46.    A week later, on January 25, 2023, Scripps emailed Bolton-Curley requesting a call to discuss the Copyrighted Documentary materials.  Bolton-Curley did not respond.

47.     On January 30, 2023, Defendants emailed Bolton-Curley requesting a call with Bolton-Curley to discuss the Copyrighted Documentary. Bolton-Curley once again did not respond.

48.     On February 7, 2023, Defendants requested a meeting to discuss the 2024 Trumpet Awards and orally terminated Plaintiffs as the production company and Executive Producer, respectively, of the 2024 Trumpet Awards, claiming it was due to there being "too much friction" between the parties.

49.     On February 17, 2023, Defendants sent a formal termination letter to Plaintiffs offering Twenty Thousand Dollars ($20,000) as compensation for the services rendered for the 2024 Trumpet Awards. By signing the letter, Scripps would be entitled to all work submitted by Bolton-Curley. Bolton-Curley did not sign or agree to the letter.

50.     Upon information and belief, Defendants' acts complained of herein are willful and deliberate.

## COUNT I.
## COPYRIGHT INFRINGEMENT

51.     Plaintiffs incorporate and reallege paragraphs 1 through 50 above as if fully set forth herein.

52.    Defendants inappropriately used Plaintiff Bolton-Curley's Copyrighted Documentary when they created the Infringing Documentary without permission or authorization from Plaintiffs.

53.    Defendants released the Infringing Documentary on June 19, 2023, through their streaming service, Brown Sugar.

54.    The Infringing Documentary has impaired the value of the Copyrighted Documentary.

55.    The Infringing Documentary is substantially similar to the Copyrighted Documentary in multiple ways, including without limitation, featuring identical interviews with the same individuals, both films are produced in chronological order of Xernona Clayton's life, both films have a voice over layered with "throwback" photos and video clips, and the Infringing Documentary was shot in the same style with the same camera angles as the Copyrighted Documentary.

56.    Defendants engaged in improper conduct and copyright infringement, as more fully described herein, by directly or indirectly:

    a.  Creating the Infringing Documentary that is substantially similar to Plaintiff Bolton-Curley's Copyrighted Documentary;

    b.  Releasing the Infringing Documentary;

    c.   Reproducing and distributing (including digital distribution of) the Infringing Documentary; and

    d.   Issuing licensing to, and authorizing, others to reproduce and distribute (including digital distribution of) the Infringing Documentary.

57.    Defendants knew or should have known that the Copyrighted Documentary was copied and distributed without authorization, but still aired the Infringing Documentary.

58.    Through their conduct as alleged in the previous paragraphs, Defendants have infringed Plaintiff Boulton-Curley's Copyright in the Copyrighted Documentary by publicly displaying the Infringing Documentary without authorization in violation of the U.S. Copyright Laws.

59.    Defendants' foregoing conduct constitutes direct, contributory, and/or vicarious copyright infringement.

60.    Each infringement by Defendants of Plaintiff Boulton-Curley's protected Copyrighted Documentary creates an independent act of infringement.

61.    Defendants' acts of infringement were with willful disregard for the Plaintiff's rights, Plaintiff is entitled to damages in an amount to be determined at trial.

62.     Since the copyright infringement by the Defendants caused direct and proximate harm to the Plaintiff, pursuant to 17 U.S. Code § 504, Plaintiff Bolton-Curley should be awarded actual, and punitive damages and/or statutory damages for each infringement proven, plus costs, interest, and attorney's fees in an amount to be determined at the time of trial.

63.     Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c)(2) in the amount of $150,000 per infringement.

64.     Pursuant to 17 U.S.C. § 505, Plaintiff is entitled to recover its full costs and reasonable attorney's fees.

65.     As a direct and proximate result of the Defendants' actions, Plaintiff has sustained and will continue to sustain immediate, substantial, and irreparable injury, for which there is no adequate remedy at law. Based upon their history of refusal to respect the rights of Plaintiff, unless this Court enjoins their actions, the Defendants will continue to infringe upon Plaintiff's valid intellectual property rights in the Copyrighted Documentary. As such, Plaintiff is entitled to preliminary and permanent injunctive relief.

## COUNT II.
## BREACH OF CONTRACT

66.     Plaintiffs incorporate and reallege paragraphs 1 through 65 above as if fully set forth herein.

67.     Defendants offered Plaintiffs the opportunity to produce the 2024 Trumpet Awards with BMP as the production company and Bolton-Curley as Executive Producer on or about November 14, 2022.

68.     Plaintiffs accepted the offer and immediately performed in accordance with the contract with Defendants and began planning the format of the 2024 Trumpet Awards in anticipation of a written contract from Defendants.

69.     Bolton-Curley repeatedly requested a written contract from Defendants for Plaintiffs' roles in producing the 2024 Trumpet Awards.

70.     Bolton-Curley received a draft of the written contract on or about January 18, 2023, after threatening not to attend the upcoming site survey visit for the awards show.

71.     Bolton-Curley sent the draft contract to her legal counsel. However, a final contract was never sent out or signed by either party despite Bolton-Curley's continuous work on the 2024 Trumpet Awards.

72.     Bolton-Curley had to turn down a paid opportunity to produce another award show in reliance that she would be producing the 2024 Trumpet Awards.

73.     Defendants orally terminated Plaintiffs due to an alleged "tension" between the Defendants and Bolton-Curley on February 7, 2023, and emailed a formal termination letter on February 17, 2023.

74.     Plaintiffs have sustained damages as a result of this breach in an amount to be determined at trial.

## COUNT III.
## PROMISSORY ESTOPPEL

75.     Plaintiffs incorporate and reallege paragraphs 1 through 74 above as if fully set forth herein.

76.     Plaintiffs accepted Defendants' offer and relied on Defendants' promise and began planning the 2024 Trumpet Awards and incurred costs associated with this work. Plaintiffs also turned down other paid opportunities to perform their roles as production company and Executive Producer, respectively.

77.     Defendants' conduct as alleged herein, created a promise and/or promises by Defendants to Plaintiffs, including without limitation that Plaintiffs' opportunity to produce the 2024 Trumpet Awards with BMP as the production company and Bolton-Curley as Executive Producer medical conditions render her disabled from performing the essential duties of her own occupation under the terms of the Policy and the Plan, and that Plaintiffs' interests would not be adversely impacted by their reliance thereon.

78.     Defendants intended, knew or reasonably should have known that Plaintiff would be induced to rely upon the promise and/or promises alleged herein.

79.     Plaintiffs reasonably relied upon the promise and/or promises alleged herein to their detriment.

80.     Defendants are estopped from revoking the promise and/or promises alleged herein.

81.     Defendants' induced detrimental reliance by Plaintiffs, upon the promise and/or promises alleged herein, have injured, and resulted in an injustice to, Plaintiffs and proximately caused Plaintiffs severe mental anguish, personal pain and suffering, lost benefits and unjust enrichment of Defendants, extreme humiliation and embarrassment, for which damages are recoverable, in an amount to be established at the time of trial.

## COUNT IV.
## TORTIOUS INTERFERENCE WITH CONTRACT
## AND WITH BUSINESS RELATIONSHIP

82.     Plaintiffs incorporate and reallege paragraphs 1 through 81 above as if fully set forth herein.

83.     Plaintiffs have a production agreement contract with Xernona Clayton as alleged herein.

84.     Plaintiffs have a legitimate, identifiable business relationship with Xernona Clayton, which was interfered with by the actions of the agents and employees of Defendants.

85.     Upon information and belief, Defendants with full knowledge of the contract as alleged herein, acting with malice, and to advance their own interests, intentionally interfered with Plaintiff's rights in said contract, and with said contract, and set out upon a course of action to induce Xernona Clayton to violate the terms of the contract.

86.     Defendants' employees, consultants and agents, wrongful acts, as alleged herein, aided and abetted the tortious interference with said contract.

87.     As a direct and proximate result of Defendants' wrongful acts, as alleged herein, Defendants interfered with Plaintiffs' contract and business relationship with Xernona Clayton causing Plaintiffs to suffer financial loss as well as emotional distress entitling Plaintiffs to damages in an amount to be determined at trial.

## COUNT V.
## WRONGFUL TERMINATION

88.     Plaintiffs incorporate and reallege paragraphs 1 through 87 above as if fully set forth herein.

89.     Defendants and Plaintiffs entered into an oral contract for Plaintiffs to serve as Executive Producer of the Trumpet Awards in exchange for compensation.

90.     Defendants orally terminated Plaintiffs' due to "tension" between the parties on February 7, 2023, and emailed a formal termination letter on February 17, 2023.

91.     Defendants retaliated and fired Plaintiffs' from being the Executive Producer and Production Company, respectively, of the Trumpet Awards due to Bolton-Curley not responding to Scripps' requests to obtain Copyrighted Documentary assets and materials.

92.     It was not until Bolton-Curley declined to meet with Scripps about the Copyrighted Documentary assets and materials that Bolton-Curley felt tension from Defendants.

93.     Plaintiffs were terminated as a form of retaliation for not cooperating with Defendants' strong arm and manipulative attempts to obtain assets and materials of the original Copyrighted Documentary produced by Bolton-Curley. Due to this, Bolton-Curley sustained damages in an amount estimated to be not less than Two Million Dollars ($2,000,000.00).

## COUNT VI.
## QUANTUM MERUIT AND UNJUST ENRICHMENT

94.     Plaintiffs incorporate and reallege paragraphs 1 through 93 above as if fully set forth herein.

95.    Defendants received a link to confidential information on the Copyrighted Documentary from Mrs. Clayton without prior notice of Bolton-Curley.

96.    Bolton-Curley made Defendants aware that they could not use any assets or material of the Copyrighted Documentary shared with them without a licensing agreement and without the Plaintiffs' approval, per the agreement created between Clayton and Plaintiffs.

97.    However, Defendants did not choose to pursue the documentary with Bolton-Curley after speaking with her about her vision and viewing her materials.

98.    It is an industry practice and customary within the film and television industry to have writers and/or producers submit scripts to networks such as Defendants and set up meetings to talk about their work.

99.    Writers and/or producers present their materials in hopes that their story will be chosen for production by the network, and they will receive compensation and credit for their work.

100.   It is an industry practice that if the writer and/or producer's idea is not chosen, the network will not use any of the materials or ideas presented to them by the creator.

101.   The Copyrighted Documentary and its materials were something of value to the Defendants. This is shown by their previous interest in 2018 and 2022 when Defendants contacted Bolton-Curley about her materials.

102.   In addition, Defendants made several attempts to meet and discuss the Copyrighted Documentary in 2023, when Bolton-Curley joined the team as Executive Producer of the Trumpet Awards.

103.   By the Defendants having access to and knowledge of the Copyrighted Documentary, they were provided with a blueprint of Clayton's life.

104.   Defendants produced and created their own documentary of Clayton's life. This Infringing Documentary aired on June 19, 2023.

105.   Bolton-Curley shared the Copyrighted Documentary with the understanding that if the Defendants liked the Copyrighted Documentary, Defendants would license the work and Plaintiffs would be compensated and receive credit for the work.

106.   There is an implied promise to pay for services and/or materials received if Defendant decided to pick up the documentary to produce.

107.   Bolton-Curley expects compensation and credit from the Defendants for using her Copyrighted Documentary format and creative vision as the blueprint to create the Infringing Documentary.

108.   To allow the Defendants to use the format, intellectual property, and creative overview of the Plaintiffs' work on the Copyrighted Documentary would be unjust especially since Defendant were made aware that in order to use such materials Defendant would have to receive a license from the Plaintiffs.

109.    Thus, the defendants have been unjustly enriched by the receipt and enjoyment of Plaintiffs' intellectual property and materials sent to the Defendants without payment, for which payment was expected. The value of such enrichment is equal to the fees in an amount to be proven at trial.

## COUNT VII.
## UNFAIR COMPETITION AND DECEPTIVE TRADE PRACTICES
### (In Violation of the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370)

110.    Plaintiffs incorporate and reallege paragraphs 1 through 109 above as if fully set forth herein.

111.    It is industry practice and customary within the film and television industry to have writers and/or producers submit work to networks such as Defendants and set up meetings with them, so their idea could be chosen for production and the creator can receive compensation and credit for their work.

112.    Further, there is an implied promise to pay for services and/or materials received if Defendant did choose the documentary to produce.

113.    Defendants using the Plaintiffs' documentary format, creative vision, and intellectual property without Plaintiffs' consent has prevented Bolton-Curley from being able to freely publish the Copyrighted Documentary

114.   Within the film and television industry there is a line of trust that when a writer or/and producer submits work to a network, the network will not use the work for their own gain without compensating and crediting the creator.

115.   Allowing Defendants to air the Infringing Documentary could potentially harm the film and television industry by showing it is acceptable for large television networks and production companies to use the artistic work of another for nothing in exchange. This could discourage writers and producers from creating work and continue to let production companies continue their deceptive practices without consequences.

116.   Defendants' acts constitute unfair competition under the Georgia Uniform Deceptive Trade Practices Act, have created actual confusion, a likelihood of confusion, and will continue to create a likelihood of confusion, all to the irreparable injury of Plaintiff Bolton-Curley unless restrained by this Court. Bolton-Curley has no adequate remedy at law for this injury.

117.   By reason of Defendants' acts, Bolton-Curley has and will continue to suffer damages to its business, reputation and goodwill, and loss of sales and profits Bolton-Curley would have made but for Defendants' acts.

118.   Monetary damages will not provide full and adequate relief for all of Bolton-Curley's injuries from Defendants' unlawful conduct and Plaintiff is

therefore entitled to an injunction pursuant to the law of the Georgia Uniform Deceptive Trade Practices Act.

## COUNT VIII.
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

119.   Plaintiffs incorporate and reallege paragraphs 1 through 118 above as if fully set forth herein.

120.   By engaging in the conduct alleged herein Defendants have breached the covenant of good faith and fair dealing implied in the contract between Plaintiffs and Defendants, and have acted in an intentional, malicious and deliberate manner, with willful and conscious disregard of the harm to: (1) Plaintiffs; (2) Plaintiffs' reputation in the community; (3) Plaintiffs' relationship with their professional colleagues; and, (4) Plaintiffs' relationship with other third parties.

121.   As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff has suffered pecuniary and general damages all in amounts to be determined at trial.

## COUNT IX.
## FRAUDULENT INDUCEMENT

122.   Plaintiffs incorporate and reallege paragraphs 1 through 121 above as if fully set forth herein.

123.   On or about November 14, 2022, Plaintiff entered into an agreement with Defendants to produce the 2024 Trumpet Awards with BMP as the production company and Bolton-Curley as Executive Producer based upon the representations made by Def4ndants as alleged herein.

124.   Defendants' representations alleged herein were material representations.

125.   Plaintiffs, in reliance upon Defendants' material representations, alleged herein agreed to produce the 2024 Trumpet Awards with BMP as the production company and Bolton-Curley as Executive Producer.

126.   Plaintiffs reasonably relied, to their detriment, upon Defendants' material representations herein when they agreed to produce the 2024 Trumpet Awards with BMP as the production company and Bolton-Curley as Executive Producer.

127.   Defendants knew that the material representations alleged herein were knowingly fraudulent misrepresentations at the time they were made to Plaintiffs.

128.   Defendants knew, at all relevant times herein, that the material misrepresentations were false and willfully intended to, and thereby did, induce Plaintiffs to act on the material misrepresentations as alleged herein.

129.   As a direct and proximate result of the fraudulent misrepresentations committed by Defendants, Plaintiffs have sustained special damages in the amount

of lost benefits and unjust enrichment of Defendants, in an amount that will be established at the time of trial.

130.   As a direct and proximate result of the fraudulent misrepresentations committed by Defendants, Plaintiffs have suffered extreme humiliation and embarrassment for which general damages are recoverable, in an amount that will be proven with specificity at the time of trial.

## COUNT X.
## ACCOUNTING

131.   Plaintiffs incorporate and reallege paragraphs 1 through 130 above as if fully set forth herein.

132.   Plaintiff is entitled to an accounting from Defendants of the profits made by Defendants in violation of Plaintiffs' rights in the Copyrighted Documentary (as previously alleged herein).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray:

A.     That the Court issue a judgment against Defendants and in favor of Plaintiffs on all applicable counts;

B.     That the Court issue a judgment that Defendants' acts constitute copyright infringement and unfair competition in violation of the United States Copyright Act, 28 U.S.C. § 1338(a) and (b);

C.     That the Court issue a declaratory judgment that Defendants' acts constitute deceptive and unfair trade practices in violation of the Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-372, 10-1-420, and 10-1-421;

D.     That Defendants, jointly and severally, be required to account to and compensate Plaintiffs for Defendants' profits and actual damages suffered by Plaintiffs as a result of Defendants' acts of copyright infringement and unfair competition in an amount to be proven at trial;

E.     That the Court issue a judgment that Defendants breached their contract with Plaintiffs causing Plaintiffs to suffer damages to be proven at trial;

F.     That the Court issue a judgment that Defendants breached the implied covenant of good faith and fair dealing causing Plaintiffs to suffer damages to be proven at trial;

G.     That the Court issue a judgment that Defendants fraudulently induced Plaintiffs causing Plaintiffs to suffer damages to be proven at trial;

H.      That the Court issue a judgment that Defendants tortiously interfered with Plaintiffs contract and business relationship causing Plaintiffs to suffer damages to be proven at trial;

I.      That the Court issue a judgment that Defendants wrongfully terminated Plaintiffs causing Plaintiffs to suffer damages to be proven at trial;

J.      That the Court issue a judgment that Defendants are estopped from revoking the promise and/or promises made to Plaintiffs which caused Plaintiffs to act in reliance thereupon and thereby suffer damages to be proven at trial;

K.      That Defendants, jointly and severally, be required to pay compensatory damages and punitive damages for their acts of unfair trade practices to the maximum extent permitted by law in an amount to be proven at trial;

L.      That Defendants, jointly and severally, be compelled to pay Plaintiffs' attorneys' fees, together with costs of this suit, pursuant to 17 U.S.C. § 505, the Uniform Deceptive Trade Practices Act (O.C.G.A. § 10-1-372, 10-1-420, and 10-1-421), and Rule 54 of the Federal Rules of Civil Procedure;

M.      That the Court issue a judgment for an accounting from Defendants of the profits made by Defendants in violation of Plaintiffs' rights in the Copyrighted Documentary (as previously alleged herein);

N.      That the Court grant Plaintiffs an award of their costs, expenses, and reasonable attorneys' fees, to the extent not awarded above;

O.      That pre-judgment and post-judgment interest be awarded to the maximum extent provided by law; and

P.      That the Court grant Plaintiffs such other and further relief as is just and proper.

## JURY TRIAL DEMANDED

Plaintiffs Amy Bolton-Curley and Bolton Media Productions, Inc. demand trial by jury of all issues so triable.

Dated: December 22, 2023          **GREENSPOON MARDER, LLP**

/s/ Alan S. Clarke, Esq.
Alan S. Clarke, Esq.
Georgia Bar No.: 128225
1230 Peachtree Street, NE, Suite 1900
Atlanta, GA  30303
Tel: (404) 786-1888
Alan.Clarke@gmlaw.com
Robert J. Rando (*Pro Hac Vice* admission
request forthcoming)
New York Bar No.: 2335537
590 Madison Ave., Suite 1800
New York, NY 10022
(212) 524-5000
Robert.Rando@gmlaw.com
Monifa Hall (*Pro Hac Vice* admission
request forthcoming)
Florida Bar No.: 1018572
200 East Broward Blvd., Suite 1800
Fort Lauderdale, FL 33301

Monifa.Hall@gmlaw.com
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel hereby certifies that this **Complaint** complies with the type-volume limitations set forth in Rule 5.1 of the Local Rules of the United States District Court for the Northern District of Georgia and that this has been typed in Times New Roman 14 point.

*/s/Alan S. Clarke*

Alan S. Clarke

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 22nd day of December 2023, a copy of

the foregoing was filed with the Clerk of the Court using the CM/ECF system, which

will send notification of such filing to all attorneys of record.

<u>/s/ Alan S. Clarke, Esq.</u>
Alan S. Clarke, Esq.