UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AMY BOLTON-CURLEY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SCRIPPS NETWORKS, LLC, et al., <br><br> Defendants. | CIVIL ACTION NO. <br> 1:23-CV-05931-JPB |

## ORDER

This matter is before the Court on Bounce Media, LLC's ("Defendant") Motion to Dismiss [Doc. 16]. This Court finds as follows:

## BACKGROUND

Amy Bolton-Curley and Bolton Media Productions, Inc. (collectively, "Plaintiffs") filed this action against Defendant on December 22, 2023.[1] [Doc. 1]. On February 23, 2024, Defendant filed the instant Motion to Dismiss. [Doc. 16]. The motion is now ripe for review.

## BACKGROUND

The following facts are taken from Plaintiffs' Complaint. Bolton-Curley, who is the principal of Bolton Media Productions, is an experienced story producer

---

[1] Plaintiffs also sued Scripps Networks, LLC. Plaintiffs voluntarily dismissed their claims against Scripps on March 15, 2024. [Doc. 19].

with credits on over 200 videos, television shows and specials. [Doc. 1, p. 4]. Defendant is an American digital multicast television network that features a mix of original and acquired programming geared towards African Americans between twenty-five and fifty-four years of age. Id. at 6.

Plaintiffs hold a registered copyright for a documentary film titled, "The Unassuming Activist, Xernona Clayton: A Life to Remember" ("The Unassuming Activist"). Id. at 5. Plaintiffs allege that in 2018, Defendant sent an inquiry to Plaintiffs about licensing The Unassuming Activist for a period of ninety days so that it could be shown on Bounce TV. Id. at 6–7. In anticipation of entering into a licensing agreement with Defendant, Bolton-Curley shared The Unassuming Activist and all its elements with Defendant's creative and executive teams. Id. at 7. Ultimately, the parties never agreed to a licensing agreement. Id.

Four years later, Defendant produced its own documentary titled, "Xernona Clayton: Life in Black and White" ("Life in Black and White"). Id. at 8. According to Plaintiff, Life in Black and White is substantially similar to The Unassuming Activist because both films: (1) feature identical interviews with the same individuals; (2) are produced in chronological order as to Clayton's life; (3) have a voiceover layered with throwback photos and video clips; and (4) were shot in the same style with the same camera angles. Id. at 12.

Unrelated to the two documentaries mentioned above, on November 14, 2022, Defendant asked Plaintiffs to produce the 2024 Trumpet Awards. Id. at 8. Thereafter, Plaintiffs accepted and began planning the Trumpet Awards. Id. at 9. As part of this planning, Plaintiffs created a recommendation overview, discussed with Defendant the budget and producer fees and retained additional staff members. Id. Although Defendant sent a draft contract to Plaintiffs, a signed contract was never executed. Id. at 10. On February 7, 2023, Defendant orally terminated Plaintiffs as the producers of the Trumpet Awards. Id. at 11. On February 11, 2023, Defendant sent a formal termination letter to Plaintiffs offering $20,000 as compensation for the services rendered for the Trumpet Awards. Id. Plaintiffs did not accept the $20,000. Id.

In filing this action, Plaintiffs assert the following claims against Defendant relating to the two documentaries: (1) copyright infringement; (2) quantum meruit and unjust enrichment; (3) unfair competition and deceptive trade practices; and (4) accounting. As to the Trumpet Awards, Plaintiffs bring five claims: (1) breach of contract; (2) promissory estoppel; (3) wrongful termination; (4) breach of implied covenant of good faith and fair dealing; and (5) fraudulent inducement. Seemingly unrelated to either the documentaries or the Trumpet Awards, Plaintiffs also assert a tortious interference with contract and business relationship claim.

## LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." Traylor v. P'ship Title Co., 491 F. App'x 988, 989 (11th Cir. 2012). Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint is insufficient if it only tenders naked assertions devoid of further factual enhancement. Id. Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (citation omitted). In sum, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," id., and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Traylor, 491 F. App'x at 990 (quoting Iqbal, 556 U.S. at 678). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, a court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations. Iqbal, 556 U.S.

4

at 678.  Accordingly, evaluation of a motion to dismiss requires two steps:  (1) a court must eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are remaining well-pleaded factual allegations, a court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.

Further, Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud."  To meet this pleading standard, "a plaintiff must allege:  '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [plaintiff]; and (4) what the [defendant] gained by the alleged fraud.'"  Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380–81 (11th Cir. 1997)).  This heightened pleading requirement serves an important purpose:  to "provide the defendants with sufficient notice of the acts of which plaintiff complains to enable them to frame a response, prevent fishing expeditions to uncover imagined wrongs, and protect defendants from unfounded accusations of immoral and otherwise wrongful conduct."  U.S. ex rel. Clausen v. Lab'y Corp. of Am., 198 F.R.D. 560, 562 (N.D. Ga. 2000), aff'd, 290 F.3d 1301 (11th Cir. 2002).

**DISCUSSION**

Defendant moved to dismiss all ten causes of action. The Court will discuss the copyright infringement claim first.

I. **Copyright Infringement**

In this case, Plaintiffs claim that Defendant's documentary—Life in Black and White—infringes on the copyright for The Unassuming Activist. In reviewing the instant motion, the Court watched both films.[2]

To state a valid claim for copyright infringement, a plaintiff must allege: (1) ownership of a valid copyright[3] and (2) "copying of constituent elements of the work that are original." Beal v. Paramount Pictures Corp., 20 F.3d 454, 459 (11th

---

[2] Defendant attached both documentaries to its Motion to Dismiss. The documentaries can be considered because they are central to Plaintiffs' claims and their authenticity is not challenged. Johnson v. City of Atlanta, No. 22-11359, 2024 WL 3384936, at *6 (11th Cir. July 12, 2024) (holding that the court can consider extrinsic documents when the documents are central to the plaintiff's claims and undisputed, meaning that their authenticity is not challenged). The Court notes that other courts within this circuit have examined copyright infringement claims at the motion-to-dismiss stage because the analysis requires only an examination of the works in question. See, e.g., Wooten v. Netflix, No. 1:20-CV-5166, 2021 WL 4864744, at *3 (N.D. Ga. May 25, 2021) (collecting cases); Kmet v. Discovery Commc'n, LLC, No. 4:16cv565, 2017 WL 11672822, at *2 (Nov. 30, 2017) (holding that the court can decide substantial similarity on a motion to dismiss "because the court has before it all that is necessary in order to make such an evaluation"); Sieger Suarez Architectural P'ship v. Arquitectonica Int'l Corp., 998 F. Supp. 2d 1340, 1350 (S.D. Fla. 2014) (explaining that Eleventh Circuit case law supports a trial court's ruling based on infringement at a motion to dismiss and noting that other circuits have approved the practice of deciding the issue of substantial similarity upon a motion to dismiss).

[3] Ownership of a valid copyright is not at issue here.

Cir. 1994).  "To establish copying, the plaintiff must show that the defendant had access to the copyrighted work and that the two works are so 'substantially similar' that an average lay observer would recognize the alleged copy as having been appropriated from the original work."  Singleton v. Dean, 611 F. App'x 671, 672 (11th Cir. 2015).

"The mere fact that a work is copyrighted does not mean that every element of the work is protected."  Id.  Indeed, "copyright protection extends only to the original elements of expression in a work."  Baby Buddies, Inc. v. Toys R Us, Inc., 611 F.3d 1308, 1316 (11th Cir. 2010).  "Material that is not original cannot be copyrighted."  Beal, 20 F.3d at 459.  Noncopyrightable material includes broad ideas and "'scenes a faire'—stock scenes that naturally flow from a common theme."  Id.  An example of stock scenes includes cowboys, bank robbers and shootouts in stories of the American West.  Wooten v. Netflix, No. 1:20-CV-5166, 2021 WL 4864744, at *3 (N.D. Ga. May 24, 2021).  Noncopyrightable material also includes historical facts.  Feist Publ'n, Inc. v. Rural Telephonic Serv. Co., 499 U.S. 340, 347 (1991) ("No one may claim originality as to facts.").

Here, Plaintiffs allege that the documentaries are substantially similar because both films:  (1) feature identical interviews with the same individuals; (2) are in chronological order; (3) have a voiceover layered with throwback photos and video clips; and (4) are shot in the same style with the same camera angle.  As

explained below, none of these purported similarities are copyrightable or original elements of expression.

Plaintiffs first argue that the documentaries are substantially similar because both films feature "identical interviews with the same individuals." [Doc. 1, p. 12]. Like most documentaries, both films contain interviews with those who know about the subject matter of the documentary—here, Clayton. For instance, The Unassuming Activist has interviews with Ted Turner and John Lewis. T.I., Pamela Poitier and Clayton's stepchildren gave interviews for Life in Black and White. Particularly relevant here, both films feature interviews with Martin Luther King III, Andrew Young and Raphael Warnock. Even though these three individuals were interviewed for both films, the interviews were not identical and did not contain the same substance. Importantly, interviews in documentaries are "scenes a faire" that follow naturally from the documentary format and theme of the work. Monbo v. Nathan, 623 F. Supp. 3d 56, 95 (E.D.N.Y. 2022). Because both films are documentaries, the Court would expect them to contain interviews with people who played a significant role in Clayton's life. In short, the Court concludes that this purported similarity, which is common to all documentaries, is unprotectable and not copyrightable.

Next, Plaintiffs argue that the documentaries are substantially similar because both films present Clayton's life in chronological order (from her early

childhood in Oklahoma to the present).  In the Court's view, presenting events in chronological order is not protectible expression.  Indeed, the Court would expect that chronological order is the preferred format for any historical work or story about a person's life.  "'Mechanical' arrangements, such as alphabetical or chronological order, do not display the request originality . . . sufficient to render an arrangement protectible."  Lipton v. Nature Co., 71 F.3d 464, 479 (2d Cir. 1995).

Plaintiffs additionally contend that the two works are substantially similar because both films have a voiceover layered with throwback photos and video clips.  "The use of a news clip or voiceover at the beginning of a film to give it a 'documentary feel' is not original to Plaintiffs' work but rather a common feature of documentaries."  Monbo, 623 F. Supp. 3d at 95.  Because voiceovers used in conjunction with old photos and videos is a common theme of documentaries, they are not protectible expression.

Finally, Plaintiffs argue, without any specificity, that the two works are substantially similar because they both were "shot in the same style with the same camera angles." [Doc. 1, p. 12].  After reviewing the films, the Court fails to see anything unusual about the orientation of the camera angles.  As such, the Court finds that the style and camera angles used in The Unassuming Activist is not original to Plaintiffs' work.  See Fulks v. Knowles-Carter, 207 F. Supp. 3d 274,

281 (S.D.N.Y. 2016) (holding that generalized notions of where to place the cameras are insufficient to establish substantial similarity of protected expression).

Ultimately, even though both works are about Clayton's life, they are not substantially similar as that phrase is used in copyright jurisprudence.  In the Court's view, Plaintiffs only point to similarities that are part and parcel of the documentary format instead of similarities that are protectible under copyright law.  As such, to the extent that Defendant argues that the copyright infringement claim should be dismissed, the motion is **GRANTED**.

## II.     State Law Claims

Plaintiffs bring nine state law claims against Defendants, which are before the Court pursuant to the Court's supplemental jurisdiction.  28 U.S.C. § 1367 "empowers [a] trial court to decline to exercise supplemental jurisdiction over a state law claim if it has dismissed all of the related claims over which it has jurisdiction."  Engelhardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1350 (11th Cir. 1998).  In assessing whether to retain or reject supplemental jurisdiction, a court should consider the following factors:  judicial economy, convenience, fairness and comity.  West v. City of Albany, 830 F. App'x 588, 597 (11th Cir. 2020).  Notably, the Eleventh Circuit Court of Appeals has stated that in the usual case where all federal claims are dismissed before trial, the balance of the factors "will point toward declining to exercise jurisdiction over the remaining state-law

claims." Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1296 (11th Cir. 2018); see also Estate of Owens v. GEO Grp., Inc., 660 F. App'x 763, 775 (11th Cir. 2016) ("This Court has repeatedly said that, when all of the federal claims have been dismissed pretrial, Supreme Court case law 'strongly encourages or even requires dismissal of the state claims.'")

In considering the first three factors (convenience, fairness and judicial economy), it is important to recognize that this case is still in its earliest stages. The only substantive filing has been the instant motion. Importantly, Defendant has not answered, and discovery has not opened. In declining to exercise jurisdiction at this stage, inconvenience or unfairness to the parties would be virtually non-existent. The parties will not need to expend substantial additional resources to refile the matter in state court or refile the dismissal motion. As to the comity factor, the Court notes that "[r]esolution of Plaintiffs' state law claims depends on determinations of state law. State court, not federal courts, should be the final arbiters of state law." Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1353 (11th Cir. 1997). This principle—that Georgia state law claims are best resolved by Georgia courts—"is especially true . . . where the Court is dismissing Plaintiffs' federal law claim prior to trial." Id. Comity thus "decidedly weighs in favor of dismissal." Estate of Owens, 660 F. App'x at 775.

After consideration of the factors, the Court declines to exercise supplemental jurisdiction over the remaining claims. Plaintiffs' state-law claims are thus **DISMISSED WITHOUT PREJUDICE**.[4]

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss [Doc. 16] is **GRANTED**. The federal claim is **DISMISSED WITH PREJUDICE**,[5] and the state claims are **DISMISSED WITHOUT PREJUDICE**. The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 8th day of August, 2024.

_____
J. P. BOULEE
United States District Judge

---

[4] "When a court decides not to exercise supplemental jurisdiction under § 1367(c)(3) because only state claims remain, the proper action is a dismissal without prejudice so that the complaining party may pursue the claim in state court." Ingram v. Sch. Bd. of Mia.-Dade Cnty., 167 F. App'x 107, 109 (11th Cir. 2006).

[5] In response to Defendant's Motion to Dismiss, Plaintiffs state "[i]f the Court should agree with [Defendant's] arguments for dismissing any part of the action against it, Plaintiffs respectfully request leave to amend the Complaint prior to dismissal." Even if this was the correct procedure to request leave to amend, a thorough examination of the documentaries indicates that no amount of repleading could alter the outcome as to Plaintiffs' copyright infringement claim.